IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TAMMI CARR, BRIAN SHIPLEY,
RYAN WARFIELD, DOUGLAS LOHR,
and MELODY PERDEW**,

        Plaintiffs,

   v.

**OREGON DEPARTMENT OF
TRANSPORTATION, MATTHEW
GARRETT in his official and individual
capacity, MULTNOMAH COUNTY,
and DANIEL STATON in his official and
individual capacity**,

        Defendants.

No. 3:13-cv-02218-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiffs, each of whom was homeless at the time the events underlying this action occurred, allegedly lived in a makeshift camp on a state right of way until Defendants evicted them. In a class action complaint, they now assert that Defendants seized their property without adequate notice or a meaningful opportunity for retrieval, in violation of the Fourth and Fourteenth Amendments. Multnomah County ("the County") and Sheriff Daniel Staton (collectively, the "County Defendants") move to dismiss the complaint as against them [14] for

1 – OPINION AND ORDER

failure to state a claim. Plaintiffs responded [16], and the County Defendants replied [19]. Because I find that the allegations in the complaint do not support an inference that the County Defendants violated Plaintiffs' rights, I will GRANT the motion with leave to amend.

## BACKGROUND

On April 15, 2011, a group of homeless persons, none of whom is a Plaintiff in this action, filed a § 1983 suit against the same four persons and entities named as Defendants here. Complaint at 1, *Tucker v. Or. Dep't of Transp.*, No. 11-466 (D. Or. Apr. 15, 2011), ECF No. 1. The complaint alleged that Defendants removed the plaintiffs' property from a campsite on state a right of way without notice or an opportunity to retrieve it, in violation of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 50–57, 63–66. The plaintiffs also asserted a claim of common law conversion. *Id.* ¶¶ 67–70.

Magistrate Judge Papak held a settlement conference on June 27, 2011. Two days later, the parties notified Judge Hernandez that they had reached a settlement. An order of dismissal was entered on August 10, 2011.

As part of the settlement of the *Tucker* action, Defendant Oregon Department of Transportation ("ODOT") agreed to amend its regulations to bolster the procedural protections available to homeless persons whose property is seized. (1st Am. Compl. [10] ¶ 58.) *See* Or. Admin. R. §§ 734-035-0010, 0040 (2012). The regulations now require ODOT to provide at least ten days' notice before removing personal property from state right of way. Or. Admin. R. § 734-035-0040(2). The notice must inform the property's owners of the length of time that ODOT will store the property and how they may retrieve it. Or. Admin. R. § 734-035-0040(3)(d), (e). Even before the *Tucker* settlement, ODOT was required to store property taken

from a state right of way for at least thirty days and permit property owners to schedule appointments to claim it. Or. Admin. R. § 734-035-0030 (1990).

In the fall of 2013, each of the named Plaintiffs lived in a wooded area near the intersection of SE 92nd Avenue and SE Flavel Street in Portland. (1st Am. Compl. [10] ¶¶ 21, 26, 34, 42, 51.) On September 30, 2013, ODOT posted signs at this location, warning its occupants that all of their property would be removed. *Id.* ¶ 15. Attached to an adjacent chain-link fence, the signs faced away from Plaintiffs' camp such that they could not be read from inside. *Id.* Four out of the five named Plaintiffs did not notice the signs. *Id.* ¶¶ 20, 27, 36, 43, 53.

Three days later, on October 3, ODOT trucks, County Sheriff's deputies, and an inmate work crew arrived at the camp and began to dismantle it. *Id.* ¶¶ 21, 30, 57. ODOT employees and inmates packed into black plastic bags anything that would fit, and loaded all of the property at the camp into dump trucks. *Id.* ¶ 30. One of the Plaintiffs "lost everything she owned." *Id.* ¶ 25. The rest later attempted to retrieve their property from ODOT, but none of them managed to recover everything that was taken. *Id.* ¶¶ 32–33, 40–41, 47–49, 56. Plaintiff Ryan Warfield in particular lost all of his possession. *Id.* ¶¶ 40–41.

Plaintiffs filed a class action complaint [1] on December 17, 2013. Like the plaintiffs in the *Tucker* action, they allege that Defendants' seizure of their property without adequate notice and without an adequate opportunity to retrieve it violated their rights under the Fourth and Fourteenth Amendments. (Compl. [1] ¶¶ 77–81.) They also allege that Defendants' conduct amounted to conversion. *Id.* ¶ 82–85. Plaintiffs amended their complaint [10] on February 21, 2014. They have not yet moved to certify a class.

3 – OPINION AND ORDER

Now, the County Defendants move to dismiss the First Amended Complaint [14]. They assert that Plaintiffs have failed to allege that any County policy or custom caused their alleged constitutional deprivations, as required under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (Mot. [14] at 4–5.) They also argue that Plaintiffs have not alleged any wrongful conduct on Sheriff Staton's part. *Id.* at 4. Finally, they contend that Plaintiffs have failed to state a claim of conversion. *Id.* at 5–6.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). This Court "must accept as true all of the allegations contained in a complaint." *Id.* However, to satisfactorily state a plausible claim to relief, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir.2011) (quoting *Twombly*, 550 U.S. at 555).

A plaintiff in a § 1983 claim must show that the defendant (1) "subject[ed], or cause[d] to be subjected," the plaintiff to a deprivation of a federal constitutional or statutory right (2) under color of state law. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right" when that person's conduct or omission "causes the deprivation of which complaint is made." *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). The conduct must be not only a cause in fact of the deprivation, but also a proximate cause. *Id.* at 1355–56. The defendant's conduct is not a proximate cause of a constitutional deprivation if the defendant

neither knew nor had reason to know that the deprivation would result.  *See Harrington v. City of Portland*, 677 F. Supp. 1491, 1495–96 (D. Or. 1987) (holding that the plaintiff did not adequately allege that the defendant police officers knew or should have known that their conduct would cause the City  defendants to discriminate against her on the basis of sex or deprive her of continued public employment without due process).

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory," but may be held to account for deprivations resulting from local government policy or custom. *Monell*, 436 U.S. at 690–91.  Even absent a policy or custom, a municipality may be liable under § 1983 if a municipal officer with "final policymaking authority" (1) caused the deprivation personally, (2) ratified the constitutional violation of a subordinate, or (3) harbored deliberate indifference to the unconstitutional consequences of a subordinate's conduct.  *Christie v. Iopa*, 176 F.3d 1231, 1235, 1238–39, 1240 (9th Cir. 1999).  A suit against a municipal officer in his official capacity is, "in all respects other than name," a suit against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

**I.**     <u>**Initial Seizures During Eviction**</u>

Plaintiffs allege that the County Defendants directed Sheriff's deputies and inmate work crews to assist in the October 3, 2013, camp sweep.  They also allege that the sweep took place without adequate notice.  They assert that the County Defendants' role in removing their property from the camp violated their rights under the Fourth and Fourteenth Amendments.  (1st Am. Compl. [10] ¶¶ 79–83.)

**A.**     *Unreasonable Seizure Under the Fourth Amendment*

The Fourth Amendment protects a person's "effects" from "unreasonable searches and seizures." U.S. Const. amend. IV.  A "seizure" results from "some meaningful interference with

5 – OPINION AND ORDER

an individual's possessory interest" in the individual's property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Removing a homeless person's unattended but unabandoned property is just such an interference. *Lavan v. City of L.A.*, 693 F.3d 1022, 1030 (9th Cir. 2012). A municipality seizes a homeless person's property unreasonably if it destroys the property before giving its owner a meaningful opportunity to retrieve it. *Id.* at 1030–31.

Here, the County's work crews meaningfully interfered with Plaintiffs' possessory interest in their property when they allegedly removed that property from the camp. The sweep therefore resulted in a seizure. Because the work crews allegedly acted at the direction of Sheriff Staton, a County official with final policymaking authority, their conduct is attributable to both County Defendants. (*See* 1st Am. Compl. [10] ¶ 7 (Sheriff Staton "is responsible for the operations of the Sheriff's Office"), ¶ 57 ("Sheriff's deputies and prisoner work crews carried out much if not most" of the conduct involved in the sweep).) The seizure may well have been unreasonable, as Plaintiffs allege that ODOT failed to provide them a meaningful opportunity to claim their property afterward. However, the complaint as presently written does not permit an inference that the County Defendants' conduct was a proximate cause of any Fourth Amendment violation. Missing is any allegation that the County Defendants played a role in disposing of the property without adequately maintaining it for retrieval, or that any County agent knew or should have known that such disposal would occur. The First Amended Complaint therefore does not state a cause of action against the County Defendants for a violation of the Fourth Amendment.

    **B.**    *Deprivation of Property Without Due Process*

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "[T]he most basic of property interests encompassed by the due process clause" is a person's "interest in the

continued ownership" of her property. *Lavan*, 693 F.3d at 1031. Within this most basic scope of the due process guarantee is a homeless person's ownership interest in property that she has left unattended but not abandoned. *Id.* State and local governments may not take that property without furnishing its owner with adequate notice and an opportunity to be heard in opposition. *See id.* at 1032–33 (holding that the defendant city deprived homeless persons of their property without due process when it seized and destroyed the property without warning).

As noted above, among the procedures ODOT implemented as part of the *Tucker* settlement is a requirement that notice be posted "in a conspicuous location . . . at least ten days but not more than 19 days" before ODOT removes personal property from state right of way. Or. Admin. R. § 734-035-0040(2). That notice must set forth when the property will be removed, how long ODOT will retain the property, and how its owner may go about retrieving it. § 734-035-0040(3)(c)–(e).

Plaintiffs allege that ODOT posted notice of the sweep only three days before conducting it, a significantly shorter period than the agency's regulations require. (1st Am. Compl. [10] ¶¶ 15, 21.) They also allege that the notice signs, which ODOT attached to a fence, faced away from the tents such that they could not be read from within the camp. *Id.* ¶ 15. According to the First Amended Complaint, all but one of the named Plaintiffs failed to notice the signs. *Id.* ¶¶ 20, 27, 36, 43, 53. Plaintiffs assert that removing the Plaintiffs' personal property from the camp with less than ten days' notice violated ODOT's amended regulations. *Id.* ¶ 64.

The County and Sheriff Staton were parties to the *Tucker* settlement. Stip. Order of Dismissal at 1, *Tucker v. Or. Dep't of Transp.*, No. 11-466 (D. Or. Aug. 10, 2011), ECF No. 30. Both agreed to abide by the settlement agreement's terms, as set out in part in ODOT's amended

regulations.  (1st Am. Compl. [10] ¶ 66.)[1]  Plaintiffs argue that the County Defendants' provision of labor to the camp sweep despite their knowledge of the procedure set forth in the regulations violated Plaintiffs' constitutional rights.  (Resp. [16] at 7–8.)

Assuming that the notice Plaintiffs received was inadequate under the Fourteenth Amendment, Plaintiffs have plausibly alleged that they suffered a deprivation of procedural due process when the County and State Defendants allegedly seized their property and disposed of it without a meaningful opportunity for retrieval.  As is true of their Fourth Amendment claim, however, Plaintiffs have not alleged sufficient facts to permit an inference that the County Defendants' conduct was a proximate cause of any due process deprivation.  Absent from the complaint is any allegation that the County Defendants knew or had reason to suspect that Plaintiffs had not received adequate notice that their property would be taken.  Absent this knowledge or a reasonable basis for it, the County Defendants could not reasonably have foreseen that participating in the camp sweep would cause a deprivation of Plaintiffs' due process rights.

Because the allegations in Plaintiffs' complaint do not permit a plausible inference that the County Defendants knew or should have known that ODOT did not provide adequate notice, the First Amended Complaint does not state a claim against them for deprivation of procedural due process.[2]

---

[1] Paragraph 66 refers only to the County.  Plaintiffs allege, however, that the County provided sheriff's deputies and a work crew to assist in the sweep.  (1st Am. Compl. [10] ¶ 57.)  That Sheriff Staton directed this activity may plausibly be inferred from this allegation.

[2] Plaintiffs also allege that the County Defendants' conduct deprived them of substantive due process.  (1st Am. Compl. [10] ¶ 82.)  Neither the First Amended Complaint nor Plaintiffs' response to the County Defendants' motion sets forth what substantive liberty interest Defendants allegedly invaded.  Because the First Amended Complaint fails to allege that the County Defendants deprived Plaintiffs of any specific liberty interest, it does not state a claim against them of deprivation of substantive due process.

8 – OPINION AND ORDER

## II.     Storage and Provision for Retrieval of Seized Property

Plaintiffs allege that Defendants failed to maintain their property such that they could recover it after the sweep, as required by ODOT's regulations. (1st Am. Compl. [10] ¶¶ 33, 41, 47–49, 56.) They assert that Defendants' inadequate provision for retrieval violated the Fourth and Fourteenth Amendments and worked a conversion of their property. *Id.* ¶¶ 79–87. However, in connection with each of the specific instances of inadequate storage, Plaintiffs refer only to ODOT officials. *Id.* at 33, 41, 47–49, 56. They do not allege that County officials or agents played any part in the events underlying their claims after assisting in the sweep itself. They also do not allege that any agent of the County knew or should have known that ODOT would not adequately maintain their seized property for retrieval. The First Amended Complaint therefore fails to state a claim against the County Defendants for any wrongful conduct, constitutional violation or tort, arising from the storage of Plaintiffs' property after the sweep occurred.

## CONCLUSION

Because Plaintiffs' First Amended Complaint does not contain factual matter permitting a plausible inference that the County Defendants' conduct was a proximate cause of any deprivation of Plaintiffs' rights under the Fourth and Fourteenth Amendments, it does not state a claim against them under § 1983. I do decide at this stage in the proceedings whether the procedural defects alleged rise to a violation of either constitutional provision. I hold only that the complaint does not allow an inference that the County Defendants would be liable for any constitutional deprivation (or damages in tort) that those defects may have caused.

The County Defendants' Motion To Dismiss Plaintiffs' First Amended Complaint [14] is GRANTED. As to the County Defendants, the First Amended Complaint [10] is DISMISSED without prejudice. Plaintiffs will file any further amended complaint within twenty-one days of this Order.

IT IS SO ORDERED.

DATED this  29th  day of July, 2014.

                                                    ./s/Michael W. Mosman
                                                    MICHAEL W. MOSMAN
                                                    United States District Judge

10 – OPINION AND ORDER